UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Honorable Tonianne J. Bongiovanni |
| v. | Mag. No. 16-5019 (TJB) |
| ERIC HAFNER | **CRIMINAL COMPLAINT** |

I, Silvana Sotillo, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this Complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

Silvana Sotillo, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
October 6, 2016 at Trenton, New Jersey

HONORABLE TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

RECEIVED
OCT 6 - 2016
TONIANNE J. BONGIOVANNI
U.S MAGISTRATE JUDGE

**ATTACHMENT A**

On or about September 1, 2016, in the District of New Jersey, and elsewhere, the defendant,

ERIC HAFNER,

in interstate and foreign commerce, transmitted from Ireland, United Kingdom to Monmouth County, New Jersey and elsewhere communications that contained threats to injure the person of another, that is, verbal threats placed through the internet and over the phone via the Skype internet application stating, "I'm gonna get you and your wife," and "I'm outside your house right now," and "You're gonna die," and "Gonna slice you up into little pieces and fuckin' feed you to my dogs," and "I'm gonna kill ya and you can't do shit about it," and "I hope you enjoy your last days of life," and "He's gonna get a bullet in his head now," and "You're not gonna live much longer, you realize that. You can't do shit about it. Make another phone call. It's not gonna help ya," and that he did so for the purpose of issuing threats and with knowledge that the communications would be viewed as threats.

In violation of Title 18, United States Code, Section 875(c).

**ATTACHMENT B**

I, Silvana Sotillo, am a Special Agent with the Federal Bureau of Investigation. I have knowledge of the following facts based on my own investigation and discussions with other law enforcement personnel and other individuals, and my review of other evidence involved in this matter. Because this affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a complaint, I have not included each and every fact known by the government concerning this investigation. All dates and times ascribed to events herein are approximate.

1. From in or about 2007 to in or about April of 2012, Victim 1 was an Assistant Prosecutor at a New Jersey county prosecutor's office (the "Prosecutor's Office"). During Victim 1's tenure as an Assistant Prosecutor, he was assigned to prosecute a matter in which HAFNER was a juvenile defendant. The case was resolved via a guilty plea.

2. After leaving the Prosecutor's Office in 2012, Victim 1 entered private practice, joining a New Jersey law firm ("Law Firm A"). On or about the morning of July 31, 2012, HAFNER called Law Firm A and left a message for Victim 1 in which he gave his name, requested a return phone call, and gave a telephone call-back number ending in 7614 (the "7614 Facility"). Victim 1 placed a call to the 7614 Facility later the same morning, and recorded his attempt to return HAFNER's call. Victim 1 initially reached HAFNER'S voicemail. The outgoing message stated, in relevant part, "you've reached ERIC HAFNER." Victim 1 left a message indicating that he was attempting to return HAFNER's call.

3. Approximately three minutes later, HAFNER called Law Firm A using the 7614 Facility asked to speak to Victim 1. Victim 1 took the call and recorded his conversation with HAFNER. HAFNER accused Victim 1 of having engaged in misconduct in handling HAFNER's juvenile offense, including having relied upon the account of witness "Stephen Calhoun," whom HAFNER stated was unreliable. HAFNER stated that he was suffering continued mental and emotional harm as an adult resulting from his juvenile offense. Victim 1 informed HAFNER that he was no longer a prosecutor and could not assist HAFNER.

4. Victim 1 heard nothing further from HAFNER for over three years. Then, on or about December 30, 2015, Victim 1 received a postcard through the United States mail at Law Firm A, in which the sender had written, "Fuck the [Prosecutor's Office]." The postcard accused Victim 1 of engaging in a conspiracy to violate HAFNER's civil rights and warned, "Justice is coming to your doorstep."

5. On or about March 10, 2016, Victim 1 received a letter through the United States mail at Law Firm A, in which the sender warned Victim 1, "The [Prosecutor's Office] can't help you . . ."

6. On or about April 22, 2016, Victim 1 received another postcard at Law Firm A via United States mail, calling him "scum" and stating, "Fuck you and the [Prosecutor's Office]!"

7. Flight records indicate that on or about July 31, 2016 into August 1, 2016, HAFNER flew aboard a commercial flight from Tokyo, Japan to Dublin, Ireland. A further review of flight records revealed no indication that HAFNER has boarded any other international flight since arriving in Ireland.

8. On or about September 1, 2016, at approximately 10:31 a.m., an incoming call to Law Firm A's main number from a telephone number ending in 8963 (the "8963 Facility") was routed to a firm employee ("Individual 1"). The male caller identified himself to Individual 1 as "Stephen Calhoun" and instructed Individual 1 to tell Victim 1 that there was a kerosene bomb in Victim 1's basement. Individual 1 placed the caller on hold and informed Victim 1 of the call and the threat made by the caller.

9. Victim 1 picked up the call, and recorded the ensuing conversation. Victim 1 recognized the voice of the male caller as that of HAFNER. When Victim 1 questioned HAFNER as to his identity, however, HAFNER stated that his name was "Stephen D. Calhoun, your star witness." HAFNER made numerous threats during the call, including:

- "I'm gonna get you and your wife [Victim 1's wife's first name]"
- "I'm outside your house right now."
- "You're gonna die."
- "Gonna slice you up into little pieces and fuckin' feed you to my dogs."
- "I'm gonna kill ya and you can't do shit about it."
- "Yeah, I hope you enjoy your last days of life. You might wanna do like a bucket list, that you and [Victim 1's wife's first and last name]."
- "He's gonna get a bullet in his head now," referring to the state court judge who presided over HAFNER's juvenile case.
- "You're not gonna live much longer, you realize that. You can't do shit about it. Make another phone call. It's not gonna help ya."

10. When Victim 1 indicated his intention to report HAFNER's threats to police, HAFNER intimated that any call to authorities would be in vain, referring to his earlier bomb threat. HAFNER stated, "You see, you have to dial 911 and send. I only have to press one button but that's why I have the advantage in the situation." Victim 1 then terminated the call.

11. At approximately 10:39 a.m., another call from the 8963 Facility was placed to Law Firm A's main number. Another employee ("Individual 2") picked up the phone. The male caller told Individual 2 to inform Victim 1 that if Victim 1 hung up on the caller again, the caller would "off the whole office." Individual 2 placed the call on hold, and it was subsequently disconnected.

12. There is probable cause to believe that HAFNER placed the September 1, 2016 calls from Ireland. In addition to the flight records referred to in paragraph seven, review of records obtained during the investigation revealed that the 8963 Facility is affiliated with the Skype user account eric.hafner5. The Skype service uses Voice over Internet Protocol ("VoIP") technology to place a call as a digital signal sent via the internet to the receiving party. The September 1, 2016 calls were made through the eric.hafner5 Skype account. The eric.hafner5 Skype account accessed the internet through IP address 93.107.104.141 in order to place both calls. That IP address is controlled by an Irish internet service provider.